# CILENTI & COOPER, PLLC

ATTORNEYS AT LAW
200 Park Avenue – 17th Floor
New York, New York 10166
____
Telephone (212) 209-3933
Facsimile (212) 209-7102

December 22, 2021

**BY ECF**

Hon. Katherine P. Failla, U.S.D.J.
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

>   Re:   *Galvan v. Fresh Farm & Fish, Inc., et al.*
>          *Case No. 21-CV-5826 (KPF) (KNF)*

Dear Judge Failla,

We are counsel to the plaintiff in the above-referenced matter, and jointly submit this letter with counsel for the defendants seeking the Court's approval of the settlement agreement ("Agreement") reached between the parties. The Agreement is being submitted contemporaneously herewith, and the parties respectfully request that the Court approve the Agreement because it represents a fair resolution of this matter, negotiated at arm's length between experienced counsel.

## I. The Need for the Court's Approval of the Agreement

As plaintiff's action arises under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), the parties' settlement must be approved by this Court. *See Cheeks v. Freeport Pancake House, Inc.*, 796 F. 3d 199 (2d Cir. 2015). The FLSA expressly prohibits settlement of any right to unpaid minimum wages or overtime claims by employees made pursuant to 29 U.S.C. §§ 206-07, without the supervision of the Secretary of Labor. *See* 29 U.S.C. §216(c) (noting that a supervised settlement agreement "shall constitute a waiver by such employee of any right he may have [to pursue a private cause of action under FLSA"]). Courts have allowed an additional exception to the FLSA's restriction on settlement to include judicially supervised stipulated settlements. *See also D.A. Schulte, Inc., v. Gangi*, 328 U.S. 108, 113 n.8 (1946); *Lynn's Food Stores, Inc. v. United States ex. Rel. U.S. Dept. of Labor*, 679 F.2d 1350 (11th Cir. 1982); *see also Sampaio v. Boulder Rock Creek Developers, Inc.,* No. 07 Civ. 153, 2007 U.S. Dist. LEXIS 66013 (E.D.N.Y. Sept. 6, 2007).

## II. Plaintiff's Claim for Unpaid Wages

Defendants own and operate a produce and seafood market doing business as "Farm & Fish," located at 3488 Jerome Avenue in the Bronx (the "Market"). Plaintiff is a former employee of the Market, who was hired by the defendants in or about April 2020 to work as a general laborer where he performed duties such as receiving, sorting, and stocking merchandise, assisting customers, breaking down boxes, and cleaning. Neither at the time he was hired nor anytime thereafter did the defendants provide plaintiff with a written wage notice setting forth his regular hourly rate of pay and corresponding overtime rate of pay. Plaintiff's employment ended on or about May 20, 2021.[1]

Although his work hours fluctuated slightly each week, plaintiff alleges that he typically worked six (6) days per week, and his schedule consisted of eleven and one-half (11.5) hours per day. He acknowledges receiving a 30-minute break each day. Thus, Mr. Galvan alleges working sixty-six (66) hours per week.

According to plaintiff, he was paid, in cash, on a day/shift basis straight time for all hours worked. Plaintiff alleges being paid as follows:

- April 2020: $900/week
- May 2020 – May 2021: $1,000/week

Defendants produced plaintiff's wage and hour records, which corroborate plaintiff's claims. Indeed, the documents reflect that plaintiff typically worked sixty-six (66) to sixty-eight (68) hours per week, and that he even occasionally worked seven (7) days in a week, and almost eighty (80) hours during those weeks. The records also confirm that the defendants paid plaintiff $850 if he worked five (5) days (rare), $1,000 if he worked six (6) days (regardless of any fluctuation in the actual number of hours worked) and $1,150 if he worked seven (7) days.[2]

Based on the foregoing allegations, plaintiff estimates that he is owed approximately $35,000 in unpaid minimum wages, overtime compensation, and "spread of hours" premium, with an equal amount in liquidated damages.

## III. The Alleged Facts Contested by the Defendants & Defendants' Alleged Financial Hardship

While the underlying facts are largely undisputed, the method by which plaintiff's damages are calculated is in dispute. The parties are in agreement that plaintiff's regular hourly rate is determined by dividing the total hours worked during the week into plaintiff's total earnings. *See* N.Y.C.R.R. § 142-2.16. However, the defendants believe that plaintiff's overtime should be calculated using the fluctuating workweek ("FWW") method (better known as "half-time") analysis. According to the defendants, that is the proper method of calculating plaintiff's

---

[1] The Market did not close due to the COVID-19 pandemic.
[2] The number of hours worked by plaintiff as reflected on the timecards is not in dispute.

alleged damages because of the fact that he received the same amount of gross pay each week regardless of the fact that his work hours fluctuated higher and lower each week.

Meanwhile, plaintiff believes that the FWW is not applicable because plaintiff was not paid on a true salary that remained fixed each week, but rather was dependent on the number of days plaintiff worked in a particular week. Moreover, the Labor Law Regulations provide that an employee's overtime rate is based on "one and one-half times the employee's regular rate…." without making any exceptions for the FWW methodology.

If the defendants' position on this legal issue were to be accepted by the Court, it would have reduced plaintiff's underlying damages to slightly more than $3,000, with an equal amount in liquidated damages.

In addition to the foregoing, another concern tending toward settlement was plaintiff's legitimate concern about the collectability of an unsatisfied judgment against the defendants. There is always risk that a corporate or individual defendant will have no collectable assets for this uninsured claim. This is especially true here as the defendants would likely not be able to withstand a larger settlement or judgment. Defendants operate a small neighborhood market with limited financial resources that has been impacted by the Covid-19 pandemic, which would only be further damaged by protracted litigation thereby creating further risk to plaintiff. Indeed, during discovery, the defendants produced significant documentation highlighting the defendants' financial condition, including: (i) unpaid back rent in excess of $50,000; (ii) ongoing repayment of an SBA loan of $170,000; and (iii) minimal taxable income in 2020 of only $64,073.

### IV.     The Settlement

As reflected in the attached Agreement, the parties have agreed to settle the case for a total of $22,000 to resolve all of plaintiff's wage and hour claims against the defendants, payable in full within fourteen (14) days of the Court's approval of the Agreement and dismissal of the case.

### V.     The Agreement is Fair and Reasonable

We believe this settlement to be a fair resolution to this litigation, due to *bona fide* disputes about the value of plaintiff's claims.

An FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc.,* 900 F. Supp.2d 332, 335 (S.D.N.Y. 2012). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a reasonable compromise of disputed issues rather than a mere waiver of statutory rights brought about by an employer's overreaching." *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07 Civ. 86, 2008 U.S. Dist. LEXIS 20786, at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food Stores v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)); *see also In re Penthouse Executive Club Compensation Litig.,* No. 10 Civ. 1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement).

Here, it is undisputed that this settlement did not result because of "overreaching" by the employer. To the contrary, the settlement was reached as a result of extensive arm's length negotiations between counsel who are well versed in the prosecution and defense of wage and hour actions, as well as during mediation before Michael P. Graff, Esq. Courts typically regard the adversarial nature of a litigated FLSA case to be an indicator of the fairness of the settlement. *See Aponte v. Comprehensive Health Management, Inc.*, No. 10 Civ. 4825, 2013 U.S. Dist. LEXIS 47637 at *9 (S.D.N.Y. Arp. 13, 2013).

In light of the various disputes concerning plaintiff's claims, as well the risk of ongoing litigation, this settlement should be approved. By settling now, plaintiff receives a significant portion of his underlying unpaid wages even after attorneys' fees and costs are deducted, while enabling the parties to avoid the risks inherent in any trial. Based on our assessment of litigation risks, which we discussed thoroughly with plaintiff during mediation, he made the decision to accept the defendants' offer. It is respectfully submitted that, in view of the foregoing, this settlement is a reasonable compromise of disputed issues and should therefore be approved.

### VI. *Application for Attorneys' Fees*

Pursuant to this firm's retainer agreement with plaintiff, our firm seeks retain one-third of the net proceeds of the settlement after expenses are deducted.[3] Therefore, counsel seeks $7,199.28 in fees, and $400 in costs, for a total fee application of $7,599.28.

Attorneys' fees in FLSA settlements are examined, to ensure that the interests of plaintiff's counsel in his own compensation did not adversely affect the extent of the relief counsel procured for the clients. *See Wolinsky v. Scholastic*, 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012). In this case, plaintiffs' counsel fee of one-third is reasonable. Of course, had the case proceeded, assuming plaintiff prevailed, plaintiff's counsel would have made a fee application for much more than the amount currently sought in fees. Additionally, as stated above, plaintiff is being made whole even after fees and costs are deducted.

While the Second Circuit's ruling in *Cheeks* did not outline the factors for approving a settlement, certain red-flag issues were identified, such as the inclusion of confidentiality provisions, general releases, and attorneys' contingency fees over in excess of 40%. *Id.* at 206. This Agreement contains no such red flags. Moreover, since the *Cheeks* decision, courts routinely hold that a contingency fee award is presumptively valid where "the proposed fee amount is exactly one-third of the net settlement amount, which is an amount routinely approved under the percentage method" in this District, "particularly where it is pursuant to a previously negotiated retainer agreement." *See Yunjian Lin v. Grand Sichuan 74 St Inc.*, No. 15 Civ. 2950, 2018 U.S. Dist. LEXIS 110266, at *15-16 (S.D.N.Y. July 2, 2018) (citations omitted); *Daniels v. Haddad*, 17 Civ. 8067, 2018 U.S. Dist. LEXIS 212861, at *2-3 (S.D.N.Y. Dec. 17, 2018). Here, plaintiff agreed to a one-third contingency retainer agreement with counsel in connection with his wage-and-hour claims.

---

[3] The firm's expenses total $400 consisting of the filing fee to commence the action.

      If the Court were to analyze counsel's fees on a lodestar basis, the Court should still approve the Agreement. Counsel's lodestar is more than the fees requested herein. Cilenti & Cooper, PLLC's requested rates ($400 per hour for lawyers and $100 for paralegal) have repeatedly been approved as reasonable. *See Rescalvo v. BTB Events & Celebrations Inc.*, 16 Civ. 7647 (PAE) (S.D.N.Y. Jan. 24, 2018); *Gonzalez, et al. v. Crosstown Diner Corp., et al.;* No. 16 Civ. 2544 (BCM) (S.D.N.Y. 2017); *Sierra v. Skyline Gourmet Deli*, No. 15 Civ. 3319 (SN) (S.D.N.Y. 2016); *Romero v. Lu Woodside Mini Mall, Inc.*, No. 15 Civ. 5030 (PK) (E.D.N.Y. 2016); *Catalan, et al. v. H&H Kim Corp., et al.*, No. 15 Civ. 7443 (DF) (S.D.N.Y. 2016). Attached hereto is a copy of Cilenti & Cooper, PLLC's billing records for work performed on this matter.

      For all of the reasons set forth above, the parties respectfully request that the Court approve the Agreement and enter the proposed Stipulation and Order of Dismissal, which is being submitted simultaneously herewith, that expressly provides that the Court will retain jurisdiction over this matter solely for purposes of enforcing the Agreement.

                                Respectfully submitted,

                                /s/
                              Justin Cilenti

Enclosures

cc: Defense Counsel (by ECF)